Johnson, J.
The question in this case arises on a demurrer of the defendant to the petition, alleging that said petition did not state facts sufficient to constitute a cause of action.
The plaintiffs sue as individuals, and not in the partnership name, and claim to recover on a policy of insurance against fire, on a stock of goods in Indianapolis, for one year, from April 17, 1869, to April 17, 1870.
The original policy was issued April 17, 1866, for one year, and was renewed each year thereafter, the last renewal being on 17th of April, 1869. It was issued to the firm of H. E. West & Oo., composed of the plaintiffs and one Henry E. West, who, on the 1st of December, 1869, retired from the firm, and assigned all his interest in said policy and stock of goods to his copartners, the plaintiffs, who continued the business.
The stock of goods was consumed by fire, December 17, 1869. Hence this action.
By the terms of the policy, the defendant contracted “ to make good to the insured, their executors, administrators, or assigns, all such immediate loss or damage as shall happen by fire to the said property.”
Upon the foregoing facts, but one question is presented. That is : Did the assignment by Henry E. West of his interest in the policy and stock of goods avoid the policy or prevent a recovery thereon — the assent of the company to such transfer not having been given thereto ?
This question must be determined by giving a construction to the terms and conditions of the policy. In form *7 and language, it is an agreement between two parties, the insurer aud the insured, though executed only by the insurer.
The only clause relating to such a transfer is in the words following: “And it is further agreed . . . that if this policy, or any interest therein, shall be assigned, unless, in either case, the assent thereto of said company be indorsed hereon, these presents shall thenceforth be null and void.”
It will be observed that this policy (which is part of the record) is a contract with a partnership, and not with the individuals composing it; that, as such partners, they owned the stock of goods, and were doing business therewith in the usual way.
It is also important to note that the policy contains no provisions relating to alienation of the property, or prescribing any mode of continuing the policy, in case of sale of the goods, by obtaining the assent of the company thereto. Such provisions are to be found, we believe, in most insurance contracts.
The clause above quoted relates only to an assignment of the policy, or any interest therein, and is silent as to the alienation of the property insured.
Ordinarily, this omission is unimportant, for it is well settled that in such case, when the insured, by alienation or otherwise, parts with all his insurable interest in the property insured, he can not, in case of loss recover, because, having no interest in the property destroyed, he has sustained no damage. Neither can the assignee of the policy, without the assent of the insurer, recover, because he is a stranger to the contract, whom the company is not bound 'to recognize.
In the examination of the numerous cases cited, this omission is an important element, as very many of them turn on the words limiting and restricting alienation. Thus, in Dix v. Mercantile Ins. Co., 22 Ill. 277, and The Hartford Ins. Co. v. Ross et al., 23 Ind. 179, there was this clause, upon which the cases largely turned: “And in case of any transfer or change of title in the property, or of any undivided *8 interest therein, such insurance shall be void and cease.” They were cases much like the one before us; and stress is laid by the court on the words “ undivided interest,” as correctly describing a partner’s interest. So, also, in many other cases, the peculiar wording of these clauses relating to alienation enter largely into the discussion of the legal aspects of the case, in the opinion of the courts deciding them.
As to such clauses, it is sufficient to say that, as a general rule, their only effect is to either enlarge or restrict the right, which exists without them, to bring an action by the assured in case of loss. If the assured still retains such an insurable interest in the property, as that he sustains a loss by the fire, he can, to the extent of that loss, recover; otherwise, if he has parted with all such interest, for then no damage has resulted to him.
Great care should also be taken to distinguish between those cases decided by an application of the common-law rules of pleading and those which are made to depend solely on the rights of the parties growing out of the terms of the contract itself. The former depend on who are the proper parties to the action at common law, the latter on the terms of • the contract; and from these terms the court must determine the existence, extent, and character of the obligations and liabilities of the parties to the contract. The one is to be decided by the rules of pleading, the other by a construction of the stipulations of the policy.
Since the adoption of our code, under which the real party in interest may sue, whether the contract is joint or several,.the former class of decisions becomes unimportant.' There can be no doubt that if the common-law rules of pleading were in force in Ohio, the plaintiffs could not recover — not because they had no insurable interest, for they owned all the property covered by the policy; nor because they sustained no damage, for that is admitted; but solely for the reason that this was. a joint contract by the insured, and all must be joined as plaintiffs. By these rules, if all *9 were so joined, they still could not recover, because Henry E. "West, one of the joint contractors, had parted with all his insurable interest by a sale. In either case, the result would alike be fatal to these plaintiffs, who have sustained all the loss against which they were indemnified; and the' rights.of the parties, and the liabilities of the insurers, arising from the terms of the policy, would remain undetermined by the court.
In Murdock v. The Chenango Ins. Co., 2 Comst. 210, one tenant-in common sold his interest in the property insured to his co-tenant. The action was in the name of loth, though the company had assented to the sale. It was held that the misjoinder was fatal. On the other hand, Tate v. Citizens’ Ins. Co., 13 Gray (Mass.), 79, was a case like the» former, except that the action was in the name of the co-tenant, who had become sole owner by purchase. It was held that the non-joinder was alike fatal, Judge Bigelow saying: “ Upon familiar principles, both the joint contractors should join in bringing the action, . . . and the omission to join them is a good defense.”
In both cases, the parties were sent out of court without their rights adjudicated, by the application of the “familiar principles ” of common-law pleading.
Under the code, the real party in interest must sue. In this case the suit is properly brought, but the right of recovery does not depend on questions of misjoinder or nonjoinder of parties, but upon the liability of the insurers growing out of the contract. ’Is the defendant therefore liable to the plaintiffs by the terms of this policy ? To determine this question, reference must be had to the familiar rules of construction.
The policy should receive a reasonable interpretation. Its intent and 'substance should be ascertained from the language employed.' Its stipulations should have full legal effect, to guard the insurer against fraud and imposture. As it is a contract of indemnity to the insured, it should be liberally construed in his favor, not only because this mode of construction is most conducive to trade and *10 business, but because it is probably most consonant with the intentions of the parties. There is no more reason for a strict compliance with its terms than ordinary contracts. There is nothing in such a contract intrinsically more sacred or inviolable than a contract about any other subject. 25 Wend. 874. Exceptions in a policy should be strictly construed, and when there are two interpretations equally fair, that which gives the greater indemnity should prevail. May on Insurance, sec. 174.
None of these rules is more fully established or more imperative and controlling than that which declares that it must be liberally construed in favor of the insured, so as not to defeat, without a plain necessity, his claim to indemnity, which, in making his insurance, it was his object to secure; and- when the words “ without violence ” are susceptible of two interpretations, that which will sustain the claim and cover the loss must in preference be adopted. May on Insurance, see. 175.
Guided by these principles, let us examine the terms, which, it is claimed, avoid this policy.
The natural reading of these terms, “ if this policy or any interest therein be assigned,” would seem to be completed by adding after the word “ assigned” the name of the contracting party, so as to read, “ if this policy or any interest therein be assigned by said 11. F. West $ Co.,” IT. E. West & Go. alone could make an assignment of the title to the policy. Henry E. West did not assign the policy or any interest in it which the firm had. The partnership name must be used to transfer the policy or any definite interest therein.
The cases are numerous where it has been held, that to constitute alienation of the property, a conveyance of the title, and nothing short of this, would amount to an alienation ; that “ transfer of the title of property insured,” means the title and ownership of property insured, and not the interest of the insured therein. Masters v. Madison Co. Ins. Co., 11 Barb. 624.
A sale by one partner to another is not such an alienation *11 as will avoid the policy, even under an express condition that the policy shall become void. Angelí on Ins. 197.
A mere change of interests or ownership among partners, where no stranger is introduced, and no addition made to the number of the insured — when there is no change in the condition or situation of the property or risk — a mere assignment of his interest, by one partner to the other, is obviously not within the principle or motives on which the condition is founded. Pierce v. Nashua Fire Ins. Co., 50 N. H. 297.
Henry E. West assigned his interest in the policy. What was that interest ? Not any aliquot part of the whole, for they were partners seized “ per my et per tout ” of the common stock of goods. West v. Skip, 1 Vesey, Sen., 242.
It was his share of the capital stock remaining after satisfying all partnership demands. When title to property, real or personal, is in a partnership, and is owned by it, it is clear that the conveyance by one partner of his interest conveys no greater interest than remains after all the demands against the firm are satisfied. If this firm had been insolvent when the policy was assigned — that, counting the insurance money as part of the assets, it could not pay its debts — then nothing was in fact assigned. Eor aught the court knows, this may have been so in this case.
The contracting parties were the insurers on the one hand, and H. E. West & Co. on the other. The language is clearly susceptible of the construction we have.given. The one claimed by defendant seems strained and unnatural, and calculated to defeat rather than carry out the intention of the parties.
It does violence to all settled rules of construing contracts.
Conditions of this kind should not be extended by construction beyond the reasons for their ado’ption, especially when, as in this case, it defeats the contract. The chief reason for requiring such a stipulation is to guard against the introduction of a stranger, who may not possess the *12 fidelity or watchfulness required by the insurer’s. The change should increase the hazard.
In a case of a clause of this kind it was held that a sale or conveyance to the assured does not defeat the policy, though within the words of the proviso against a sale or transfer. The interest of the insured being thereby increased, the case did not fall within the reason and spirit of the proviso. May on Ins., sec. 275, and'cases cited.
To say that H. E. "West & Co. shall not assign the policy, or any interest therein, without consent, is'a reasonable condition; but to say that the partners inter sese may not change their respective interests, is not within the spirit and reason of the clause. The presumption is, that the company had faith in all the partners ; the increase of plaintiffs’ interests, as we have seen, would but make them more watchful; the retiring partner no longer had a motive to endanger the insurer; no stranger was introduced; no one but tho.se with whom the contract was made was left in control.
There being no- adequate reason to support this enlarged construction, we can not adopt it.
It is suggested that this clause was intended to secure the continuance of Henry E. West, in whom the company reposed special confidence, and without him the policy would not have been issued. In reply to this, we adopt the language of the New York Court of Appeals in Hoffman v. Ætna Ins. Co., 32 N. Y. 411, in a similar case :
“ They testified théir confidence in each of the assured, by issuing to them a policy, but did not choose to repose blind confidence in others who might succeed to the ownership. The only evidence of their confidence in either partner is in the fact that they contracted with all; and the theory is rather fanciful than sound, that they may have intended to conclude a bargain with rogues on the faith of a proviso that one honest man should he kept in the firm to watch them.
“ It was intended by the proviso tó protect the company from a continuing obligation to the assured, if the title and *13 "beneficial interest should pass to others they might.not be equally willing to trust. "Words should not be taken in their broadest import when they are equally appropriate in a.sense limited to the object the parties had in view.”
There is still another rule equally at variance with the defendant’s claim. Stipulations in a contract providing for disabilities or forfeitures, are to receive, when the intent is doubtful, a strict construction against those for whose benefit they are introduced. To seize on words introduced in the policy as a safeguard, and make them available to defeat the claim of the assured on the theory of a technical forfeiture, is in no possible view permissible. If the policy admits of such a construction, it is due to the dexterity of the draughtsman, and not to a meeting of the minds of the parties. 32 N. Y. 414.
"We conclude, therefore, that the clause under consideration, in connection with the facts' disclosed, does not avoid the policy, and that the plaintiffs are entitled to recover thereon.
Finally, the question arises — shall these plaintiffs recover the whole that H. F. "West & Go. might have recovered, or only their individual shares ? Does the sale by Ileni’y F. "West avoid the policy as to his undivided interest?
In Hobbs & Hurley v. Memphis Ins. Co., 1 Sneed, 444, a case much like this as to its facts, it was held, as to the share or interest of the retiring partner, the plaintiffs could not recover, but only for their own interest in the firm; while in Hoffman v. Ætna Ins. Co., 32 N. Y. 415, 416, where the same question arose, it was decided otherwise. The court there say: “ There is no reason why the full measure of indemnity should be withheld from the plaintiffs, who were owners at the date of the insurance, and sole owners at the time of the loss.” "We concur in the reasoning of the court in that case, and its conclusions of law on this point.
These plaintiffs were parties to the contract; they continued to conduct the business contemplated by the policy; there was no substantial change material to the risk, and *14 none within the meaning of the clause under consideration. The policy was intended to protect the interest of each and all; and its language, fairly construed, is in harmony with that intent.
We are aware that the conclusions we have reached are at variance with the greater number of reported cases, but we believe these. conclusions rest on the firmer and more satisfactory ground of sound principles, and that they are more conducive to substantial justice — the aim and end of all law.

Judgment reversed,, and cause remandea for further proceedings.

Scott, Chief Judge, Hat, Whitman, and Wright, JJ., concurred.